**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA**
  **Plaintiffs**

  **Vs.**

**[1] SADID MEDINA-RIVERA**
  **Defendant**

**CRIM. NO. 17-cr-00622-FAB**

**MOTION UNDER 28 U.S.C. §2255
TO VACATE, SET ASIDE OR CORRECT SENTENCE
AND MEMORANDUM OF LAW IN SUPPORT**

**TO THE HONORABLE COURT:**

**COMES NOW** Manuel L. Morales-Schmidt, legal representative for **Sadid Medina-Rivera** and respectfully STATES and PRAYS as follows:

1.      On March 10, 2023, this Court entered an amended judgment of conviction in instant case sentencing Mr. Medina-Rivera to a term of 199 months and 20 days of imprisonment to be served concurrently with the sentence imposed in 10-cr-251-008 (JAF).

2.      The sentence was amended pursuant to a mandate from U.S. Circuit of Appeals for the First Circuit in case 21-1277 regarding an error in the original sentence term imposed on March 17, 2021 in instant case which in turn was the result of a plea agreement entered between the government and Mr. Medina-Rivera.

3.      Pursuant to the plea agreement, Mr. Medina-Rivera would plead guilty to count one of the indictment with counts two and three being dismissed.  The judgement sentenced Mr. Medina-Rivera as to count one, conspiracy to possess with the intent to distribute in excess of 280 grams

1

of cocaine base, in excess of 1 kilogram of heroin, in excess of 5 kilograms of cocaine, within 1,000 feet of a protected location.

4.     Other than the appeal previously mentioned no other motions have been filed concerning this judgement of conviction in any court.

5.     Mr. Medina-Rivera argues that he is being held in violation of the Constitution due to ineffective assistance of counsel during his plea agreement negotiations and COP, because his counsel at that time, Ricardo Izurieta-Ortega, did not explain correctly the details of the plea agreement.  He represented to Mr. Medina-Rivera that his sentence in instant case would run from his initial arrest in case 10-cr-0622 (JAF), considered relevant conduct to instant case, thus the sentence would be extinguished in 2030 when in reality the sentence would run until 2038.  In addition, Mr. Medina-Rivera contends that attorney Izurieta-Ortega insisted he sign a statement of facts that made reference to murder allegedly committed by him, for which he was never charged, and he states he did not commit.  Medina-Rivera has provided a sworn statement on these facts.

6.     Mr. Medina-Rivera argues the performance of his then attorney falls below an objective standard of reasonableness during the pre-trial phase.

7.     This issue was not raised during direct appeal because the error in the sentence term should have addressed it but after clarification by this court in the amended sentence, Mr. Medina-Rivera was made aware that although there was an error in the sentence term the term computation did not start with the original arrest in 10-cr-251 (JAF) but rather with the arrest in instant case, contrary to the information provided by attorney Izurieta-Ortega while convincing Mr. Medina-Rivera to sign the plea agreement.

8.     This issue has not been raised previously in any post-conviction motion or petition and there are no pending motions, petitions or appeals pending from the judgement being challenged.

9.     Mr. Medina-Rivera has no other sentence to serve after instant case.

10.    The motion is presented within the statute of limitations of one-year contained in 28 U.S.C. §2255 since the amended judgement was filed on March 10, 2023, and since March 10, 2024 was a Sunday, the term of one year runs through the next workday. March 11, 2024.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

## SUMMARY OF THE PROCEDURAL HISTORY

Petitioner along with 103 other Defendants was part of a Nine Count Indictment issued by a District of Puerto Rico Grand Jury on December 8, 2017.  The indictment charges were: Count One, Conspiracy to Possess with Intent to Distribute a Controlled Substance, (the only count for which Petitioner was sentenced) alleging that beginning on a date unknown but not later than 2010 and continuing up to and until the return of the Indictment, Petitioner and the named co-defendants knowingly and intentionally conspired with each other and with others known and unknown to the Grand Jury to gain control of the drug trafficking trade in Bayamon through force, violence and intimidation to distribute multi-kilogram quantities of narcotics drugs, in the process obtaining firearms to protect members of the conspiracy, the narcotics, the proceeds from the drug sales and to further the goals of the conspiracy.  As part of the conspiracy Defendants possessed with intent distribute 280 grams or more of a mixture or substance containing "crack" cocaine, 1 kilogram or more of a mixture or substances containing heroin, 5 kilograms or more of a mixture or substance containing cocaine, 100 kilograms or more of a mixture or substance containing marihuana all within 1,000 feet of real property comprising housing facilities owned by a public housing authority, to wit: Virgilio Dávila Public Housing Project, Rafael Falín Torrech Public Housing Project, Brisas de Bayamón Public Housing Project, Jardines de Caparra Public Housing Project, Las Gardenias Public Housing Project, La Alhambra Public Housing Project, José Celso Barbosa

Public Housing Project, Los Jeannie Public Housing Project, Alegria Norte Public Housing Project, Jardines de Cataño Public Housing Project, Sierra Linda Public Housing Project, Los Laureles Public Housing Project, Los Dominicos Public Housing Project, Vila Olga Ward, Rio Plantation Ward and El Polvorin Ward, withing the municipalities of Bayamón, Toa Baja, Cataño, Naranjito, Comerío and Corozal.  All in violation of Title 21, U.S.C. §§ 841(a)(1), 846 and 860.

Count Two, Use and Carry of a Firearm During a Drug Trafficking Crime, charged that beginning on a date unknown but not later than 2010 and continuing up to and until the return of the Indictment, several of the Defendants, including Petitioner, aiding and abetting each other, did knowingly and unlawfully use and carry firearms as that term is defined in 18 U.S.C. § 921(a)(3), during and in relation to a drug trafficking crime as charged in Count one of the Indictment, in violation 18 U.S.C. § 924(c)(1)(A).

Count Three, Use and Carry of a Firearm During a Drug Trafficking Crime Causing Murder, charged that on or about December 19, 2012 within the jurisdiction of the Court, several of the Defendants, including Petitioner, aiding and abetting each other, did knowingly and unlawfully use and carry a firearm during and in relation to a drug trafficking crime for which they may be prosecuted in a Court of the United States, a violation of 21 U.S.C. § 846, as charged in Count One, and in the course of that crime did cause the death of Jomar J. Marrero-Perez, murder as defined in 18 U.S.C. § 1111, in violation 18 U.S.C. § 924(c)(1)(A), 924(j)(1), and 2.

Count Four, Drive by Shooting, charged that on or about May 22, 2013 and within the jurisdiction of the Court, several of the Defendants, not including Petitioner, aiding and abetting each other, in furtherance of major drug offense as charged in Count One and with intent to intimidate, harass, injure, and maim, fired a weapon into a group of two or more persons and in the course of that conduct killed Carlos J. Duplessis and Luis R. Rodriguez-Perez, murders as

defined in 18 U.S.C. § 1111(a), in violation 18 U.S.C. § 36(b)(2)(A) and 2.

Count Five, Use and Carry of a Firearm During a Drug Trafficking Crime Causing Murder, charged that on or about May 22, 2013 and within the jurisdiction of the Court, several of the Defendants, not including Petitioner, aiding and abetting each other, did knowingly and unlawfully use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a Court of the United States, a violation of 18 U.S.C. § 36(b)(2)(A), as charged in Count Four, and in the course of that crime did cause the death of Carlos J. Duplessis and Luis R. Rodriguez-Perez, murder as defined in 18 U.S.C. § 1111, in violation 18 U.S.C. § 924(c)(1)(A), 924(j)(1), and 2.

Count Six, Use and Carry of a Firearm During a Drug Trafficking Crime Causing Murder, charged that on or about March 2, 2015 within the jurisdiction of the Court, several of the Defendants, not including Petitioner, aiding and abetting each other, did knowingly and unlawfully use and carry a firearm during and in relation to a drug trafficking crime for which they may be prosecuted in a Court of the United States, a violation of 21 U.S.C. § 846, as charged in Count One, and in the course of that crime did cause the death of Nelson R. Troche-Rivera, murder as defined in 18 U.S.C. § 1111, in violation 18 U.S.C. § 924(c)(1)(A), 924(j)(1), and 2.

Count Seven, Use and Carry of a Firearm During a Drug Trafficking Crime Causing Murder, charged that on or about February 10, 2016 within the jurisdiction of the Court, several of the Defendants, not including Petitioner, aiding and abetting each other, did knowingly and unlawfully use and carry a firearm during and in relation to a drug trafficking crime for which they may be prosecuted in a Court of the United States, a violation of 21 U.S.C. § 846, as charged in Count One, and in the course of that crime did cause the death of José M. Barbosa-González, murder as defined in 18 U.S.C. § 1111, in violation 18 U.S.C. § 924(c)(1)(A), 924(j)(1), and 2.

Count Eight, Use and Carry of a Firearm During a Drug Trafficking Crime Causing Murder, charged that on or about October 22, 2016 within the jurisdiction of the Court, several of the Defendants, not including Petitioner, aiding and abetting each other, did knowingly and unlawfully use and carry a firearm during and in relation to a drug trafficking crime for which they may be prosecuted in a Court of the United States, a violation of 21 U.S.C. § 846, as charged in Count One, and in the course of that crime did cause the death of Christian L. Calderon-Rojas, murder as defined in 18 U.S.C. § 1111, in violation 18 U.S.C. § 924(c)(1)(A), 924(j)(1), and 2.

Count Nine, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, charged that on or about May 31, 2017 within the jurisdiction of the Court, one of the, not the Petitioner, did knowingly engage and attempt to engage in a monetary transaction affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, such property derived from the distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1).  All in violation of 18 U.S.C. § 1957.

On December 17, 2020, Petitioner pled guilty to Count One of the Indictment pursuant to a Plea Agreement under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure.  The plea agreement included the following guideline computations: a base offense level of 43, as per USSG §§ 2A1.1(a), 2D1.1(d)(1), based on the defendant admitting possession with intent to distribute controlled substances consisting of 280 grams or more of a mixture or substance containing "crack" cocaine, 1 kilogram or more of a mixture or substances containing heroin, 5 kilograms or more of a mixture or substance containing cocaine, 100 kilograms or more of a mixture or substance containing marihuana all within 1,000 feet of real property comprising housing facilities owned by a public housing authority and his participation on the murder of Jomar J. Marrero-Perez; and a 3-level reduction under USSG § 3E1.1(a) and (b) for acceptance of responsibility.

This resulted in a total adjusted offense level of 40. The parties did not reach any stipulation as to Petitioner's Criminal History Category, but they agreed that they would recommend a sentence of imprisonment of 120 months, to be served consecutively to 121 months of imprisonment imposed as to Count One of the Indictment in criminal case 10-251 (FAB) and consecutively to the 60 months of imprisonment imposed as to Count Two of the Indictment in criminal case 10-251 (FAB).  In addition, the parties agreed that no other adjustment or departures from the total adjusted base offense level and no variant sentence under 18 U.S.C. § 3553 would be sought.  As part of the plea agreement the United States, at sentencing, would request the dismissal of the remaining counts of the Indictment, and Petitioner would waive his right to appeal the judgment and sentence in this case if the sentence imposed on both counts is a term of imprisonment of 120 months or less.

At sentencing, this Court did not follow the recommendation of the parties.  In terms of the Criminal History Category, the Court expressed that it had been overrepresented.  The Court identified factors that warranted a variant sentence below the guideline range.  Ultimately, the Court sentenced Petitioner to a term of 254 months and 13 days to be served concurrently with the term imposed in Cr. 10-251-08 FAB that were considered relevant conduct to this case and a supervised release term of 10 years.  It should be noted that Petitioner had been incarcerated due to 10-251-08 FAB since October 28, 2014.  An appeal ensued with Judgement from the Circuit Court issued ordering a recalculation of the sentence term.

Mr. Medina-Rivera´s change of plea hearing was held before this Court on December 17, 2020.  The Court explained in detail the nature and terms of the plea agreement.  The Court summarized the count Petitioner to which he was pleading guilty. The court explained the guidelines application to the case and the minimum and the maximum potential sentences available

to the court.  The court explained the waiver of appeal clause contained in the Plea Agreement. Petitioner was provided a summary of the facts he was admitting to by pleading guilty. Petitioner then pled guilty to Count one of the Indictment.

A United States Probation Officer conducted a Pre-Sentence Investigation and submitted a Pre-Sentence Investigation Report ("PSR") on February 10, 2021. (Docket No. 3298).  Petitioner through his attorney, filed Objections to the Presentence Investigation Report on March 8, 2021.

It should be noted that the plea agreement stipulation of facts, includes the following conduct:

> "He also participated in violent acts to further the drug trafficking activities.  On or about December 19, 2012, the defendant Sadid Medina-Rivera along other members of Los Menores DTO, aiding and abetting each other, did knowingly use and carry a firearm with an unknown serial number, during and in relation to a drug trafficking crime for which he may be prosecuted in a Court of the United States, and in the course of that crime did cause the death of Jomar J. Marrero-Perez, through the use of a firearm, which killing is a murder as defined in 18 U.S.C. §1111.

Plea Agreement

With regards to the guilty plea entered, Petitioner argues that he was unaware that he was admitting to the responsibility for the death of Jomar J. Marrero-Perez because he did not understand the stipulation of facts as an admission.  This admission had a significant impact in the base offense level without which the base offense level would have been 34.    Nevertheless, Petitioner did not include or made an argument on this issue either at the change of plea hearing nor the sentencing hearing.  Neither was a mention of this issue included in the Objections to the PSR.   In addition, Petitioner´s attorney did not calculate correctly the expected term of incarceration and misrepresented such term.  Under such misrepresentation Petitioner was induced by his attorney to sign..

Petitioner did not file a sentencing memorandum other than the Objections filed on the PSR.  The Objections went to the role attributed to him in the PSR as leader, organizer, drug point owner of "Los Menores".  Petitioner objected to the Criminal History Category under the argument that the prior conviction in 10-251-08 FAB over-represented his criminal history score in instant case.  It is of particular interest that Petitioner argues in his objections that a majority of the overt acts charged in this case overlap with the overt acts charged in 10-251-08 FAB.  For example, the same drug distribution amounts and location are listed in both indictments.  Therefore, the sentence should be imposed concurrently with the sentence in 10-251-08 FAB, proportionate to the time he was incarcerated for that case.  The request was that the time between October 28, 2014, the date of his arrest in 10-251-08 FAB, and January 18, 2017, the date present indictment was returned, should be considered relevant conduct to the sentence in 10-251-08 FAB and allowed to run concurrently with the sentence in instant case.

The sentencing hearing was held on March 17, 2021. After hearing arguments from the parties, the Court determined that the criminal history of Petitioner was overrepresented, and a variant sentence was warranted.  Thus, the Court imposed a sentence of 254 months and 13 days to be served concurrently with the sentences imposed in 10-251-08 FAB.  The sentence does not mention that concurrency was to be calculated from October 28, 2014, the date of Petitioner´s incarceration on 10-251-08 FAB.  The sentence imposed did not follow the recommendations contained in the plea agreement, resulting in a sentence that is 322 days longer than the one recommended in the plea agreement.  Such was the base of the appeal in case 21-1277 before the Court of Appeals.

## STATEMENT OF THE FACTS

No other facts are relevant to the present petition, other than those discussed in the previous section.

# I. THE CONVICTION OF MR. MEDINA-RIVERA VIOLATES HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

## A) The Performance of Counsel for Mr. Medina-Rivera fell below an objective standard of reasonableness during the Pre-Trial Phase

### i. Standard of Review - Ineffectiveness Prong

In *Strickland* v. *Washington,* 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two-prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id.* 466 U.S. at 688-689; *Williams* v. *Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court expressed that courts must provide deference to the performance where it could be construed as strategy.  Nevertheless, clarified that this reference to "highly deferential scrutiny"[1] referred only to the first or performance prong of the test and meant that, "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id. Strickland v. Washington,* 466 U.S. at 689-691

The Court added that,

> "... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable and proper decision that makes particular investigations unnecessary." *Id.*

---

[1] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington,* 466 U.S. at 695.

Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness.[2] *Kimmelman v. Morrison,* 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986). *See also: Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).

The Supreme Court noted that "a single, serious error may support a claim of ineffective assistance of counsel." *Id. Kimmelman v. Morrison,* 477 U.S. at 384.  The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance", even where, "counsel's performance at trial was "generally credible enough", and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.* 477 U.S. at 386.[3]

The government argued, and the Court agreed that the determining factor was whether or not counsel's "single serious error" or "failure" was the result of, or at- tributable to, a trial "strategy". *Id.,* 477 U.S. 384-386; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland v. Washington* objective standard because counsel's

---

[2] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v Washington,* 466 U.S. at 691.

[3] See also *Murray v. Carrier,* 477 U.S. 478,496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986) ("The. right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Smith v. United States,* 871 F.Supp. 251,255 & [n.8] (E.D. Va. 1994) (finding performance below constitutional stand- ards for "failure to raise an objection to a clear and indisputable error in. the PSR", but pointing out that "error was an innocent inadvertence, and not indicative of the entirety of counsel's rep- resentation of petitioner, which was competent and effective in all other respects.); *United States v. Al King Jones,* 2001 U.S. Dist. LEXIS 1740 (ED. LA 2-9-01) (same)

failure was based "on counsel's mistaken beliefs" as to the laws governing discovery. *Id.* 477 U.S. at 385.  The Supreme Court added:

> "Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibid.,* to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison,* 477 U.S. at 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after thorough investigation of the law and facts relevant to all plausible options available to counsel.  From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of *Strickland. See Kimmelman v. Morrison,* 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000). In short, no deference is due to counsel's actions, and the performance of counsel falls below the *Strickland* objective standard of reasonableness[4] if counsel's specific acts or omissions are not demonstrably[5] the result of actual

---

[4] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimme/man v. Morrison,* 477 U.S. at 365,387, 390-91.

[5] *See United States v. Burrows,* 872 F.2d 915, 918-919 (9ᵗʰ Cir. 1989)(record must "conclusive- ly" demonstrate strategic nature of counsel's actions); *Harris v. Reed,* 894 F.2d 871, 878 (7ᵗʰ Cir. 1990) (reviewing court should "not construct strategic defenses which counsel does not of- fer")(*citing Kimme/man v. Morrison,* 477 U.S. at 386); *Moffet v. Kolb,* 930 F.2d 1156, 1160- 61(7ᵗʰ Cir. 1991)(counsel's unexplained failure to use available police report, to impeach prosecution witness's statements and support theory of defense, below objective standard of *Strickland); United States v. Headley,* 923 F.2d 1079, 1084 (3ʳᵈ Cir. 1991) (remanding for hearing where there was" rational basis" in the record to believe that sentencing counsel's failure, to argue for downward adjustment in Sentencing Guidelines for minor role, was a "strategic choice"); *United States v. Acklen,* 47 F.3d 739, 743-44 (5ᵗʰ Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson,* 857 F.2d 923, 929 (3ʳᵈ Cir. 1988) (absent

strategic choices made between or among all plausible options "after thorough investigation of law and facts relevant to all possible options." *Strickland,* 466 U.S. at 691; *Kimme/man v. Morrison,* 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00).[6]

Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant, "must identify the acts or omissions of counsel that are alleged not to have been the result of the reasonable professional judgment." *Id. Strickland v. Washington,* 466 U.S. at 690.  If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC§ 2255 must hold an evidentiary hearing.[7] *A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.*

### ii.  Standard of Review - Prejudice Prong

In writing for the majority in *Strickland v. Washington,* 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively proves prejudice." *Id.* 466 U.S. at 693, 80 L.Ed.2d at 697.   More

---

evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

[6] The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical' or "objectively reasonable", because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such, a decision could be made." *Gray, supra,* 878 F.2d at 711 (citing *Strickland,* 466 U.S. at 690-91); *Holsomback v. White,* 133 F.3d 1382(11th Cir. 1998) (same); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996).

[7] *See United States v. Burrows,* 872 F.2d 915, 918-919 (9th Cir. 1989); *United States v. Briggs,* 939 F2d 222,228 (5th Cir. 1991); *United States v. Estrada,* 849 F.2d 1304, 1306-1307 (JSt Cir. 1988) and *Virgin Islands v. Weatherwax,* 20 F.3d 572, 573 (3rd Cir, 1994); *Shaw v. United States,* 24 F.3d 1040, 1043 (8th Cir. 1994) (petitioner entitled to evidentiary hearing on claim of ineffec- tive assistance of counsel unless claim inadequate on its face or if records conclusively refute factual assertions of claim); *United States v. Blaylock,* 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless§ 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief) and *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

specifically, Justice O'Connor set forth the now well-known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

While the Court noted the government's, perhaps natural, inclination to argue that attorney error is harmless unless the defendant can show that "counsel's deficient conduct more likely than not altered the outcome of the case", [8] the Court specifically and explicitly rejected this argument by the government. The Court stated that "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id* In rejecting any outcome determinative test such as that employed in Federal Rule of Criminal Procedure 33 analysis, the Court stated: "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome. *Id. Strickland v. Washington,* 466 U.S. at 694; *Williams Taylor,* 120 S. Ct. 1495, 1519, (2000)[9]

---

[8] This, of course, means that the 'plain error' standard also does not apply to ineffective assistance of counsel claims. *Id. See United States v. Olano,* 507 U.S. 725, 735 (1993) (plain error "must be real and such that it probably influenced the verdict.")

[9] *See also United States v. Day,* 969 F.2d 39, 45 and [n.3] (3rd Cir. 1992) (same) and *United States v. Loghery,* 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990) (same). While some Courts have held that *Lockhart v. Fretwell,* 506 U.S. 364,373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) modified *Strickland* "to require a separate inquiry into fundamental fairness even when [Petition- er] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding", *Williams v. Taylor,* 120 S. Ct, 1495, 1512-16, 146 L. Ed. 2d 389 (2000), this construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where the "different outcome" would be contrary to the law. *Id.* As Jus- tice O'Connor carefully pointed out in *Lockhart v. Fretwell,:* " ... today's decision will, in the vast majority of cases, have no effect on the prejudice in- quiry under *Strickland.* The determinative question - whether there is 'reasonable probabil- ity that, but for counsel's unprofessional     errors,

The Court further specifically rejected the application of the "actual prejudice" standard of *United States v. Frady,* 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584 (1982), to claims of ineffective assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *See United States v. Frady,* 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct. 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern the decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, *see id.* at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings." *Id. Strickland,* 466 U.S. at 697-98, 80 L.Ed.2d at 700.[10]

The Court hearing an ineffectiveness claim should consider the totality of the factors which guided the decision maker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors. "Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id. Strickland v. Washington,* 466 U.S. at 696, 80 L.Ed2d at 699. Where through "hindsight"[11] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient

---

the result of the proceeding would have been different' ... remains unchanged," *Id.* 506 U.S. at 373 (O'Connor) (concurring).

[10] *See Kimmelman v. Morrison,* 477 U.S. at 375,393 and [n.l] (demonstration of "a reasonable probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual ineffective assistance of counsel); *Oshorn v. Shillinger,* 861 F.2d 612, 626 and [n.13] (10th Cir. 1988) (same); *Smith v. United States,* 871 F.Supp. 251,255 (ED. Va. 1994) (same).
[11] *Lockhart v. Fretwell,* 122 L.Ed.2d at 189-91; *Mayo v. Henderson,* 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight")

to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proved prejudice. *Strickland,* 466 U.S. at 694-95; *United States v. Glover,* 121 S.Ct. 696 (2001); *Williams v Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).[12]

This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant of a consideration for a favorable adjustment or downward departure under the United States Sentencing Guidelines. *United States v. Glover,* 121 S.Ct. 696 (2001)(rejecting Court of Appeals' rule that only a 'substantial' change in the application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland).*

Based on the foregoing facts and law, Mr. Medina-Rivera has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland v. Washington,* 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) and *United States v. Glover,* 121 S.Ct. 692 (2001); *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d.  Were it not for the ineffective assistance of attorney Izurieta-Ortega, Mr. Medina-Rivera would not have agreed and signed the Plea Agreement including the Statement of Facts, leading to a different outcome than the current sentence.

This meritorious claim of ineffective assistance of counsel constitutes both an independent ground for relief and also "cause" allowing the Court to reach the merits of Medina-Rivera´s claim

---

[12] In *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00), the Supreme Court recently, explicitly, rejected the theory that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate in- quiry into fundamental fairness even when [petitioner] is able to show that his lawyer was inef- fective and that his ineffectiveness probably affected the outcome of the proceeding". *Williams v. Taylor,* 120 S.Ct. 1495, 1512-116, 146 L.Ed.2d 339 (4-18-00). This construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.*

The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where a "different outcome" would be contrary to the law. *Id. See also: Mays v. Gibson,* (10th Cir. 2000) (citing *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)); *Jackson v. Calderon,* 2000 US App. LEXIS 9049 (9th Cir. 5-8-2000) (same).

of violation of his rights under the Sixth Amendment. *Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992) (the "failure of appellate counsel to preserve on direct appeal, matters that will be deemed meritorious on collateral review constitutes cause" under the analysis of *Wainwright v. Sykes,* 433 U.S. 72, 87, 53 L.Ed 2d 594, 97 S.Ct. 2497 (1977) and *United States v. Frady,* 456 U.S. 152, 167-68, 170 (1982)) *(citing Orazio v. Dugger,* 876 F.2d 1508, 1513-14 (11th Cir. 1989) (same)).

## II. COUNSEL RENDERED INEFFECTIVE ASSISTANCE AT THE PRETRIAL PHASE WHEN HE ADVISED MEDINA-RIVERA ERRONEOUSLY ON THE EXTENT OF HIS SENTENCE.

Before deciding whether to plead guilty, a defendant is entitled to "the effective **\*\*1481** assistance of competent counsel." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Strickland,* 466 U.S., at 686, 104 S.Ct. 2052. The Court has expressed that any misadvice by counsel need not be affirmative or intentional advice to rise to the level of ineffective assistance. Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473, 176 L.Ed2d 284 (2010). The Court  must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland,* 466 U.S., at 690, 104 S.Ct. 2052. As part of the obligations of counsel, it is required that he advises his client of the advantages and disadvantages of a plea agreement. *Libretti v. United States,* 516 U.S. 29, 50–51, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995). To obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. See *Roe v. Flores–Ortega,* 528 U.S. 470, 480, 486, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective **assistance of counsel**. *Hill,* 474 U.S., at 57, 106 S.Ct. 366; see also *Richardson,* 397 U.S., at 770–771, 90 S.Ct. 1441.   No criminal

defendant should be left to the "mercies of incompetent counsel." *Richardson,* 397 U.S., at 771, 90 S.Ct. 1441.

Petitioner argues that his then attorney at the pre-trial phase failed to advise him correctly of the extent of his sentence and said misadvise caused him to agree to the Plea Agreement.  In addition, counsel advised him that the Statement of Facts attached to the Plea Agreement would have no effect in his sentencing guidelines calculations.  Such guidance by counsel was flawed and led Rivera-Medina to accept terms of the plea agreement that were not in his best interest.

Petitioner has provided a sworn statement that we reproduce in its entirety as follows:

I, Sadid Medina Rivera, of legal age, single, unemployed and resident of Bayamón, Puerto Rico, under oath state:

1. My name and personal circumstances are those provided herein.

2. I am currently serving a sentence of 199 months and 20 days at Fort Dix FCI imposed in case 17-cr-00622 (FAB) concurrent with a sentence of 181 months imposed in 10-cr-00251 (JAF) in the Federal District Court for the District of Puerto Rico.

3. The sentence in 17-cr-00622 (FAB) was imposed pursuant to a plea agreement signed by me at my attorney´s insistence without receiving an explanation as to the details of the plea agreement.

4. I was represented by retained counsel Ricardo Izurieta-Ortega who led me to believe that the total term of imprisonment for both cases was to be 199 months and 20 days from my initial arrest on October 28, 2014, in case 10-cr-00251 (JAF), considered relevant conduct for case 17-cr-0622 (FAB).

5. Attorney Izurieta-Ortega explained to me that the sentence imposed in 17-cr-00622 (FAB) would run from the initial arrest in 2014 thus my sentence would be extinguished in 2030.  This was incorrect as the sentence computation once I arrived at Fort Dix showed my sentence would run through 2038.

6. In addition, Mr. Izurieta-Ortega had me sign a statement of facts that included reference to a murder allegedly committed by me but for which I was never charged.

7. Mr. Izurieta-Ortega told me that including that allegation in the statement of facts would not affect me, but it was included in the PSR as an aggravating factor.

8. Mr. Izurieta-Ortega insisted that I sign the Plea Agreement even though I did not want to because it included the alleged murder in the statement of facts.  Mr. Izurieta-Ortega convinced me to sign after explaining that the sentence imposed in 17-cr-00622 (FAB) would run from October 28, 2014, not from the arrest date of April 4, 2018, in 00622.

9. Mr. Izurieta-Ortega was not clear on the sentencing guidelines applicability regarding the alleged murder and had to ask a fellow attorney while on a visit to MDC.  This incident occurred after my Change of Plea Hearing held on December 17, 2020.

10. It was at that time that Mr. Izurieta-Ortega expressed that he was unaware that the alleged murder included in the statement of facts had an impact on the sentencing guidelines computations.

11. I signed the plea agreement and changed my plea under erroneous information given by Mr. Izurieta-Ortega and after his insistence that it be signed.  Had I been

correctly and effectively assisted by an attorney I would not have signed the Plea Agreement nor changed my plea to guilty.

12. My change of plea was due to ineffective assistance by Mr. Izurieta-Ortega, therefore I am incarcerated in case 17-cr-00622 (FAB) based on a Plea Agreement and COP where the consent was tainted by the ineffective assistance received.

13. I declare this with the purpose of stating that my legal representation was ineffective and resulted in a Plea Agreement and COP consent that was neither free, voluntary nor with understanding of the consequences.

14. Everything I have declared is the truth to the best of my knowledge.

The issues raised by Petitioner clearly establish a representation by counsel that fell below an objective standard of reasonableness.  Counsel should have known that the allegations of participation in a murder would have an effect on the application of the sentencing guidelines. Also, the information on the extent of the sentence term, crucial for Petitioner´s decision to accept the Plea Agreement, was incorrect.  Counsel should have informed Petitioner that the sentence would not run from the first arrest in 2014 *in lieu of* assuring Petitioner that they would be calculated from that date.  His continued insistence that Petitioner sign the Plea Agreement even after the doubts expressed by Petitioner also played a key role in the decision by Petitioner to finally accept the Plea Agreement.

The performance by counsel Izurieta-Ortega fell below the objective standard of reasonableness and such ineffectiveness caused prejudice to Medina-Rivera as it enticed him to sign a Plea Agreement without full understanding of the consequences.  While it could be argued that even with the flawed advice, Medina-Rivera benefited from the Plea Agreement entered, he surrendered several fundamental rights, including the right to go to trial based on flawed advice

by counsel.  Under those conditions, the sentence must be vacated under 28 U.S.C. §2255 as it is tainted by the ineffective assistance of counsel.

**CONCLUSION**

The facts and law previously discussed merit vacating the conviction in instant case and the continuation of the process.  At minimum, the seriousness of the allegations of ineffective assistance merits an evidentiary hearing prior to this Court´s decision.

**WHEREFORE**, Petitioner respectfully requests this Court vacate his conviction under 28 U.S:C. §2255and allow the procedures to continue in instant case up to and including trial.

**I HEREBY CERTIFY** that on this same date, a true and exact copy of this document has been filed electronically in the United States District Court for the District of Puerto Rico through the CM/ECF system ant that the government and all counsel of record will be notified a copy of this motion by said system.  Petitioner will be notified via USPS First class mail to Sadid Medina-Rivera, inmate No. 44809-069, FCI Fort Dix Federal Correctional Institution, P.O. Box 2000, Joint Base MDL, NJ  08640.

**RESPECTFULLY SUBMITTED, i**n San Juan, PR, this 11ᵗʰ day of March 2024.

**MORALES-SCHMIDT, LLC**
Urb. Sta. Cruz
Esteban Padilla #47 Ste. 1-A
Bayamón, P.R. 00961
Tel.: (787) 993-2109
Fax: (787) 946-1767
lcdo.manuelmorales@delgado-morales.com
/S/ *Manuel L. Morales Schmidt*
**Manuel L. Morales-Schmidt**
USDC-PR#301608
CA1BAR#1196188